UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY BIVENS,

        Plaintiff,

v.

ZEP, INC.,

        Defendant.

Case No. 23-cv-11398
Hon. Matthew F. Leitman

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21)

In this action, Plaintiff Dorothy Bivens brings retaliation, race discrimination, and sexual harassment claims under both state and federal law against her former employer, Zep, Inc. (*See* Compl., ECF No. 1.)  Zep has now moved for summary judgment on all of Bivens' claims. (*See* Mot., ECF No. 21.)  According to Zep, Bivens' position was eliminated due to a company-wide reduction in force, and it insists that it did not harass, retaliate, or discriminate against her in any way.

The Court has carefully reviewed Zep's motion, and for the reasons explained below, the motion is **GRANTED**.[1]

_____

[1] The Court concludes that it may resolve this motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).

**I**

The parties have set forth a lengthy factual recitation in their summary judgment briefing.  Only a small part of that background is relevant to the issues the Court deems dispositive.  The Court focuses on that portion of the background below.

**A**

Zep "is a manufacturer and distributor of cleaning products and solutions for retail and commercial use." (Decl. of Joshua Rain, Zep Director of Sales, Distribution, at ¶ 2, ECF No. 21-2, PageID.154.)  On May 3, 2024, Bivens, an African American woman, began working for Zep as a Territory Sales Representative (a "TSR"). (*See id.* at ¶¶ 3-4, PageID.154-155.)  "A TSR is an outside sales position and travels from client-to-client (business-to-business) selling products and maintaining relationships with Zep's customers." (*Id.* at ¶ 3, PageID.154.)  Bivens was hired to be a TSR in the "greater Detroit Metropolitan area," which was "generally within driving distance of her home in the Detroit, Michigan area." (*Id.* at ¶ 4, PageID.155.)

**B**

On August 25, 2021, a customer "asked [Bivens] to come meet [him] because he wanted to go over some products that he needed." (Bivens Dep. at 26:15-21, ECF No. 24-2, PageID.301.)  Bivens then went to that customer's office. (*See id.*)  After

she arrived and a receptionist brought her into the customer's office, the customer closed and locked the door. (*See id.* at 26:21-27:6.)  Bivens testified that after the customer locked the door, the customer "star[red] at [her]" in a way that made her uncomfortable and "asked [her] if [they] could date." (*Id.* at 27:10-14.)  After Bivens said no, Bivens "moved the conversation back to business." (*Id.* at 27:16-17.)  Then, before the customer allowed Bivens to leave the room, he "asked [her out] again." (*Id.* at 27:19-20.)

After Bivens returned to her car, she texted her direct supervisor, Joshua Rain. Bivens told Rain that she "just had the weirdest and most uncomfortable customer visit ever." (Text Messages, ECF No. 21-2, PageID.160-161.)  Bivens and Rain then spoke on the phone, and Bivens "told [him] exactly what . . . happened" with the customer. (Bivens Dep. at 33:17, ECF No. 24-2, PageID.302.)  Rain thereafter told Bivens that he "[didn't] want [her] calling on a customer [she] fe[lt] uncomfortable with," and he told her that he would assign that customer to an "inside sales" team so that she did not have to have any interaction with that customer again. (Text Messages, ECF No. 21-2, PageID.161.)

## C

In the late summer and early fall of 2021, Zep suffered a downturn in its business.  (*See* Dep. of William Moody, Zep President and CEO, at 23:15-24:21, 32:16-33:5, ECF No. 21-5, PageID.246-247, 252-253.)   As a result of this

3

downtown, Zep decided to "cut[] costs" and reduce its employee headcount. (*Id.* at 24:21, PageID.247.)  The way that Zep decided to reduce its workforce was to eliminate certain underperforming sales territories and the TSRs that serviced those territories.  As Bill Moody, Zep's President and CEO, explained, if a particular sales territory was "under $240,000" in sales, it was not "paying for [itself]." (*Id.* at 18:4-5, PageID.244. *See also id.* at 25:6-26:10, PageID.248-249.)  Those territories were therefore "subject to be removed" as part of Zep's downsizing. (*See id.* at 18:5-6, PageID.244.)

At the time of Zep's reduction in force, Bivens' assigned territory was generating "less than $100,000 a year" in sales. (Dep. of Sheila Nicodemus, Zep Vice President of Human Resource Programs, at 98:2, ECF No. 21-4, PageID.222.)  Thus, because of the "size of her territory," that territory, and Bivens' position as a TSR, was eliminated on September 14, 2021. (*Id.* at 97:8-19, PageID.221.)

In total, 23 Zep employees were "selected for the reduction in force." (Nicodemus Decl. at ¶ 3, ECF No. 21-6, PageID.257.)  Of the employees laid off, 19 were white, one employee was Hispanic, and three, including Bivens, were African American. (*See id.*)  "20 of the 23 employees selected for termination were men, three were women." (*Id.*)

4

**II**

Bivens filed this action against Zep on June 12, 2023. (*See* Compl., ECF No.
1.)  In that pleading, Bivens brings three sets of claims against Zep under both state
and federal law: (1) claims that she was unlawfully retaliated against in violation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and
Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* (the
"ELCRA") for lodging a complaint with her supervisor about the August 25, 2021,
customer meeting described above (Counts I and II of the Complaint), (2) claims
that she was subjected to a hostile work environment in violation of Title VII and
the ELCRA based on the sexual harassment that she says she experienced during the
August 25 customer meeting (Counts III and IV of the Complaint), and (3) claims
that she was discriminated against on the basis of her race in violation of Title VII
and the ELCRA (Counts V and VI of the Complaint).

Zep filed its motion for summary judgment on July 17, 2024. (*See* Mot., ECF
No. 21.)  The Court has carefully reviewed the motion, Bivens' response (*see* Resp.,
ECF No. 23), and Zep's reply (*see* Reply, ECF No. 25), and it is now prepared to
rule on the motion.

**III**

Under Federal Rule of Civil Procedure 56, a movant is entitled to summary
judgment when it "shows that there is no genuine dispute as to any material fact."

*SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 312, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.*  But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

## IV

### A

The Court begins with Bivens' retaliation claims under Title VII and the ELCRA.  These federal and state claims are reviewed under the same standard. *See Wasek v. Arrow Energy Servs.*, *Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (noting in case where plaintiff brought a retaliation claim under both Title VII and the ELCRA that "the ELCRA analysis is identical to the Title VII analysis").  As noted above, in these claims, Bivens insists that Zep fired her in retaliation for complaining to her supervisor about the sexual harassment she experienced during her August 25, 2021, customer meeting.

6

"Title VII retaliation claims may be proved with direct evidence or by indirect evidence via the *McDonnell Douglas*[2] framework." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). "Under the [indirect evidence] approach" that applies here, a plaintiff "must first establish a *prima facie* case of retaliation by demonstrating" the following four elements:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) [the plaintiff's] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Id.* (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

If the plaintiff "succeeds in making out the elements of a *prima facie* case of retaliation, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for the termination." *Redlin*, 921 F.3d at 613 (quoting *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 236 (6th Cir. 2017) (cleaned up)). "If the employer satisfies its burden of production, the burden shifts back to [p]laintiff to show that the reason was a pretext for retaliation." *Id.* at 614. (cleaned up).

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

**B**

Even though Bivens' burden at the *prima facie* stage is not a heavy one, she has not carried it here. More specifically, she has not satisfied the second element of her *prima facie* case. That element requires Bivens to show that Zep knew of her protected activity, and to clear that hurdle, Bivens must present evidence that "her protected activity was known to those who made th[e] decision" to terminate her employment. *Fenton v. HiSan, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999). *See also Mulhall v. Ashcroft*, 287 F.3d 543, 552-554 (6th Cir. 2002) (holding that plaintiff had failed to show that defendant had knowledge of protected conduct where plaintiff "failed to produce any evidence, direct or circumstantial, to rebut" testimony that "the officials taking the adverse employment action [did not have knowledge] of his protected activity"). Simply put, "the decisionmaker's knowledge of the protected activity is an essential element of [Bivens'] *prima facie* case of unlawful retaliation." *Proffitt v. Metro. Gov't Of Nashville & Davidson Cnty. Tenn.*, 150 F. App'x 439, 442 (6th Cir. 2005) (affirming summary judgment in favor of defendant on retaliation claim where plaintiff failed to show that decision-maker knew of plaintiff's protected activity).

Bivens has not presented any evidence that the decision-maker in her case knew of her protected activity. And the undisputed evidence in the record shows that he did *not* know. That evidence shows that (1) the decision on what territories

8

to remove, and thus, which employees to lay off, was made by Zep's President and CEO Bill Moody (*see* Nicodemus Dep. at 85:1-21, ECF No. 21-4, PageID.220),  and (2) at the time Moody decided to eliminate Bivens' position, he did not know who Bivens was, much less that she had engaged in any protected activity. (*See* Moody Dep. at 26:11-13, 28:19-22, ECF No. 21-5, PageID.249, 251.)   Indeed, Moody testified that he "never had any contact with [Bivens] while she was employed with Zep" and that he "didn't even know who Ms. Bivens was until this [litigation] came up a month [before he had his deposition taken]." (*Id.*)   Because the undisputed evidence establishes that the relevant decision-maker did not know about Bivens' protected conduct, Bivens cannot satisfy her *prima facie* burden.

Bivens counters that it is "highly likely that [Zep's] higher-ups were aware of [her] complaint of sexual harassment" (Resp., ECF No. 23, PageID.273), but she has not identified any actual *evidence* – direct or circumstantial – that Moody, the only relevant decision-maker here, had such knowledge prior to her termination.   Bivens' assertion that Moody and/or other "higher-ups" must have known about her protected conduct is pure speculation that is insufficient to stave off summary judgment. *See Mulhall*, 287 F.3d at 552 (explaining that a plaintiff must identify "specific facts" that relevant decision-maker knew about protected conduct that is not based on "speculations, hunches, intuitions, or rumors." (quoting *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)).

Bivens further counters that Zep should be deemed to have knowledge of her protected conduct (of complaining about the customer's harassment) because she made her complaint to her direct supervisor, Rain. (*See* Resp., ECF No. 23, PageID.271.)  But it is undisputed that Rain was not involved in the decision to eliminate Bivens' territory or to terminate her employment. (*See* Rain Decl. at ¶ 9, ECF No. 21-2, PageID.157.)  Because Rain was not the relevant decision-maker, his knowledge of her protected activity is insufficient to satisfy the second element of Bivens' *prima facie* case. *See Fenton*, 174 F.3d at 832 (holding that plaintiff failed satisfy second element of her *prima facie* case for retaliation where, even though her direct supervisor knew of her protected conduct, plaintiff was "unable to produce any evidence that the relevant management decision-makers" knew of that activity). Moreover, Bivens has presented no evidence that Rain informed the decision-makers (or anyone in Zep's upper-management) about her protected activity.

For all of these reasons, Bivens has not satisfied her *prima facie* case of retaliation, and Zep is entitled to summary judgment on her retaliation claims.

## V

The Court next turns to Bivens' racial discrimination claims.  It is difficult to discern the precise nature of these claims, but as best the Court can tell from reviewing Bivens' Complaint and her response to Zep's summary judgment motion, Bivens' discrimination claims encompass two types of alleged discrimination: (1)

10

the termination of her employment based on her race and (2) "distinct differences in treatment [that she experienced] compared to her white male colleagues in similar situations." (Resp., ECF No. 23, PageID.281.)   The Court will review each component of Bivens' race discrimination claim separately below.

A

In order to survive summary judgment on these claims, Bivens must present direct evidence of discrimination or sufficient indirect evidence of discrimination to satisfy the *McDonnell Douglas* framework. *See Redlin*, 921 F.3d at 606 (applying the *McDonnell Douglas* framework to plaintiff's Title VII and ELCRA claims). Bivens has chosen to rely upon indirect evidence, and the Court must therefore apply the *McDonnell Douglas* framework to her claims. "Under this framework, the plaintiff must first establish a *prima facie* case of discrimination, which requires her to show that: '(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class.'" *Thompson v. Fresh Products, LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)).   "Where, as here, an employee is laid off as part of a reduction-in-force (RIF), the fourth requirement is modified and, rather than showing that she was replaced, the plaintiff must present 'direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for

11

discharge for impermissible reasons.'" *Id.* (quoting *Skalka v. Fernald Env't Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1997)).

As noted above, the "burden of establishing a *prima facie* case is not an onerous one." *Redlin*, 921 F.3d at 606. If Bivens satisfies her *prima facie* case, then "the burden shifts to [Zep] 'to articulate some legitimate, nondiscriminatory reason for' the adverse employment action. Should [Zep] do so, [Bivens] then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination." *Id.* at 607. (citations omitted) (cleaned up).

## B

### 1

The Court begins with Bivens' race discrimination claim based on her termination. The parties do not appear to dispute that Bivens can satisfy the first three elements of her *prima facie* case with respect to that claim: she is a member of a protected class (she is both a woman and African American), she was subject to an adverse employment action (her employment was terminated), and she was qualified for her position. But Bivens' *prima facie* case arising out of her termination fails at the fourth element because she has not presented any evidence that Zep "singled [her] out . . . for discharge for impermissible reasons." *Thompson*, 985 F.3d at 522 (quoting *Skalka*, 178 F.3d at 420). And the evidence in the record suggests that she was *not* singled out for such reasons. The overwhelming majority of the 23

employees who Zep fired as part of the reduction in force were white men. (*See* Nicodemus Decl. at ¶ 3, ECF No. 21-6, PageID.257.)   In short, Bivens has not identified any evidence that her firing had anything at all to do with her race.

Bivens counters that there is at least a question of fact as to whether there was a reduction in force at all. (*See* Resp., ECF No. 23, PageID.275-276.)  She says that Zep, "who has the burden of proof, provided no evidence of a RIF at all beyond a declaration." (*Id.*, PageID.275.)   However, a sworn declaration *is* competent evidence. *See* Fed. R. Civ. P. 56(c)(4).   Moreover, both Nicodemus and Moody testified about the reduction in force at length during their depositions. (*See*, *e.g.*, Moody Dep. at 22-28, 32-33, ECF No. 21-5, PageID.245-253; Nicodemus Dep. at 106-108, ECF No. 21-4, PageID.225-227.)  Contrary to Bivens' contention, Zep has presented substantial evidence of its reduction in force.

In any event, even if there was not a reduction in force, Bivens' claim would still fail at the fourth element of her *prima facie* case.  In cases where there is not a reduction in force, a plaintiff can satisfy the fourth element of the *prima facie* case by showing that the plaintiff was replaced by someone outside of her protected class. But the undisputed evidence shows that Bivens was *not* replaced and that "three years later, no TSR [has been] assigned to the territory that [Bivens] held." (Rain Decl. at ¶ 11, ECF No. 21-2, PageID.158.)

Bivens nonetheless insists that she was "replaced by" a new white employee named Kyle Mulcahy whom Zep hired shortly before Bivens was fired.  But as Rain stated in his sworn declaration, Zep hired Mulcahy to service a *different* geographic region than the one Bivens was assigned to, a region that had a larger sales base and was not affected by Zep's reduction in force. (*See id.* at ¶¶ 10-11, PageID.157-158.) Bivens has not identified any contrary evidence in the record that Mulcahy, or anyone else, was hired to service her territory or to replace her.

For all of these reasons, Zep is entitled to summary judgment on Bivens' race discrimination claims arising out of her termination.

## 2

The Court next turns to Bivens' claim that she "experienced distinct differences in treatment compared to her white male colleagues in similar situations." (Resp., ECF No. 23, PageID.281.)  This claim fails as a matter of law because the alleged differences in treatment did not amount to adverse employment actions sufficient to support a discrimination claim.

""An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions.'  Materially adverse changes in the terms and conditions of employment include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss

of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (citations omitted) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593–94 (6th Cir. 2007)).

The differences in treatment identified by Bivens do not rise to the level of adverse employment action.  For example, at her deposition, Bivens identified one primary incident in which she said that she was "treated differently because of [her] race." (Bivens Dep. at 37:1-40:3, ECF No. 21-3, PageID.181-185.)   Bivens explained that when the family member of a white employee, Kyle Ackerman, passed away, Rain "rall[ied]" the other employees to support Ackerman and encouraged employees to donate to Ackerman's family. (*Id.* at 49:1-5, PageID.191.) But Bivens says when she had two family members pass away, Rain did not "acknowledge[] . . . either of them." (*Id.* at 37:20-23, PageID.182.) Bivens also said she felt once felt singled out during a sales meeting, and another time, while driving with a co-worker, that co-worker discussed African American support for Donald Trump.[3]  (*See id.* at 46:1-48:12, PageID.188-190.)   These examples of different

___

[3] Admissions by Bivens and other evidence in the record cast doubt on her claim – which the Court accepts as true for purposes of the pending motion – that she was treated differently based upon her race.  For instance, Bivens acknowledged that when her aunt passed away, she was allowed to take "a couple of days" off so that she could attend her aunt's funeral out of state. (Bivens Dep. at 39:25-40:3, ECF No. 24-2, PageID.184-185.)  In addition, it is undisputed that when the health of Bivens' grandmother began to deteriorate, Rain approved her request to take time off to see

treatment, even when considered collectively, do not amount to materially adverse changes in Bivens' employment, and thus this treatment of Bivens cannot support a discrimination claim.[4]

For all of these reasons, Zep is entitled to summary judgment on Bivens' racial discrimination claims.

# VI

Finally, the Court turns to Bivens' claim that she was subjected to a hostile work environment in connection with the sexual harassment that she experienced during the August 25, 2021, customer meeting. "In order to establish a *prima facie* case of a hostile work environment based on sexual harassment [under Title VII or the ELCRA], [a] plaintiff must show by a preponderance of the evidence: (1) that she was a member of a protected class; (2) that she was subjected to unwelcome

---

her. (*See* Rain Decl. at ¶ 8, ECF No. 21-2, PageID.156; May 13, 2021, email, ECF No. 21-2, PageID.163.) Finally, Ackerman, the white employee who Rain allegedly treated more favorably than Bivens, was also laid off as part of Zep's September 2021 reduction in force. (*See* Rain Decl. at ¶ 9, ECF No. 21-2, PageID.157.)

[4] The examples of different treatment that Bivens identifies would appear to fit better as support for a hostile work environment claim as opposed to a claim of employment discrimination. But in her response to Zep's summary judgment motion, Bivens raises these examples of "distinct" treatment in an effort to save her racial discrimination claim. (*See* Resp., ECF No. 23, PageID.281.) In any event, even if Bivens meant to raise these examples of different treatment to support a hostile work environment claim, that claim would still fail because the examples, even when considered collectively, are not "sufficiently severe or pervasive to alter the conditions of [Bivens'] employment and create an abusive working environment." *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020) (quoting *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)).

16

sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and (5) that there is a basis for employer liability." *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008). Zep argues that Bivens cannot satisfy the fifth element of her *prima facie* case because she has failed to identify any basis for holding Zep liable for her harassment by its customer.

As the Sixth Circuit has explained, "[e]mployers are liable for the actions of nonemployees only when they knew or should have known of the offensive behavior and failed to take immediate and appropriate action." *Wheaton v. N. Oakland Med. Ctr.,* 130 F. App'x 773, 787 (6th Cir. 2005). *See also Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 861 (Mich. 2005) ("It is the case in this area of the law that employer responsibility for sexual harassment can be established only if the employer had reasonable notice of the harassment and failed to take appropriate corrective action"); *Hales v. Casey's Marketing Co.*, 886 F.3d 730, 735 (8th Cir. 2018) (explaining in case where plaintiff alleged she was subjected to harassing conduct by defendant's customer that "[a]n employer's liability [for the conduct of a customer] turns on whether the employer was aware of the conduct and whether it

17

took appropriate action to remedy the circumstances in a timely and appropriate manner").[5]

Here, Bivens has not satisfied either of the elements required to hold Zep liable for the customer's harassing conduct. First, Bivens has not identified any evidence that Zep was aware of any inappropriate conduct by the customer before he harassed Bivens. Nor has she pointed to any evidence that Zep should have known beforehand that the customer presented a risk of harassment. And Zep has presented evidence that prior to the August 25 incident, it had not received any complaints about that customer. (*See* Rain Decl. at ¶ 8, ECF No. 21-2, PageID.156.)

Second, the undisputed evidence shows that as soon as Zep learned about the customer's harassment of Bivens, it took immediate action. It re-assigned the customer to an internal sales team (that Bivens was not a part of) because Zep did not "want [Bivens] calling on a customer [she] fe[lt] uncomfortable with." (Text Messages, ECF No. 21-2, PageID.161.)

---

[5] *See also Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) ("We now hold that an employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct"); *Moore v. Countryside Care Ctr., Inc.*, No. 2:13-cv-15254, 2014 WL 4110760, at *3 (E.D. Mich. Aug. 19, 2014) ("Despite the fact that the racial harassment was prop[a]gated by a resident/customer and not the employer itself, the Defendants may be held liable if they knew or should have known about the conduct and failed to take prompt and appropriate corrective action").

Under these circumstances, Zep is entitled to summary judgment on Bivens' sexual harassment hostile work environment claim. *See Bell v. Toledo Gaming Ventures*, No. 3:21-CV-770, 2023 WL 6383627, at * 10 (N.D. Ohio Sept. 30, 2023) (granting summary judgment on harassment claim arising out of conduct of defendant's customers where defendant addressed the conduct and did not require plaintiff to continue to work with those customers); *U.S. E.E.O.C. v. GNLV Corp.*, No. 2:06-cv-01225, 2014 WL 7365871, at * (D. Nev. Dec. 18, 2014) (granting summary judgment in favor of defendant on hostile work environment claim arising out of alleged racial harassment where, among other things, "[i]n each instance where [the victim] reported the harassing conduct [by a customer], [the victim] was never subjected to harassment by the offending customer again").[6]

For all of these reasons, Zep is entitled to summary judgment on Bivens' hostile work environment claims.

## VII

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Zep's motion for summary judgment (ECF No. 21) is **GRANTED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  November 22, 2024          UNITED STATES DISTRICT JUDGE

---

[6] Bivens has not cited a single decision in which any court has denied summary judgment to an employer on a hostile work environment claim involving harassment of an employee by a customer under similar circumstances.

19

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 22, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126